## J. D. BLAIR & CO. v. E. A. THORP AND OTHERS.

1. The right of a surviving wife to the homestead is a preferred right, if the property be not incumbered with the purchase money.

2. The rulings in Robertson v. Paul, 16th Texas Reports, 472, quoted and approved, to the effect that a power to sell, contained in a mortgage or deed of trust, cannot be executed after the death of the constituent; that debts preferred by our statute (Paschal's Dig., Art. 1341) have priority over specific liens, unless the latter be for purchase money ; and that payment of the purchase money is the essential constituent of title to real estate.

3. A widow, in apparent ignorance of her right to the homestead, which had been mortgaged in her husband's lifetime, was allowed in lieu of it by the probate court, an unincumbered tract of 640 acres. *Held*, that the action of the court was erroneous: The widow, notwithstanding the mortgage, was entitled to the homestead of two hundred acres, and no more; and she could not be allowed, in lieu of the homestead, to take a greater quantity of other land, which pertained to the assets of the estate for the payment of debts. The mortgagee of the homestead stood in no better attitude than the general creditors of the estate.

APPEAL from Matagorda.

The transcript from the district court, in this case, has not reached the hands of the Reporter. The facts, however, are very fully, and doubtless very fairly, stated in the argument of counsel.

*Ballinger, Jack & Mott*, for the appellants.—The facts of this case are, that John L. Thorp, in his life time, joined by his wife, executed a deed in trust, to secure payment of a debt owing by him, *inter alia*, on a tract of land, which included the homestead of his family, of two hundred acres of land. This debt matured after his death. The family continued in the occupancy of this homestead from the date of the first deed to the proceedings which took place in the probate court.

Upon the application of the widow, alleging that by virtue of this lien, exceeding in amount the value of the property included in it, her then homestead would be taken from her, the court made her an allowance of $2000, in lieu of a homestead, and with the privilege of appropriating any property of the estate to that amount, at its appraised value; and thereupon she selected, on account of her homestead allowance, a tract of six hundred and forty acres of land, with the improvements thereon, and the court decreed and confirmed it to her.

The appellants being creditors of the estate, resisted this decree in the Probate Court; carried it by appeal to the District Court, where it was affirmed, and now bring it to this court for revision.

It is now respectfully submitted to this court that this decree was erroneous, because,

First—The homestead right of the widow and her child was superior to that of the creditors, under the trust deed; and they were entitled to hold it discharged from the mortgage or trust debt; or

Second—If this is not correct, yet inasmuch as a specific homestead existed, the only right of the widow was to that homestead, *cum onere*. and the law will not permit her to encumber the homestead, and then have an allowance to obtain another; and at all events,

Third—This allowance of a new homestead of six hundred and forty acres, with the improvements, was improper and unreasonable, and ought to be set aside.

1. The first point we maintain to be correct, on two grounds, (A) because, the Constitution expressly declares that the homestead of a family shall not be subject to forced sale.

In the case of Sampson & Keene v. Williamson, 6 Texas, 102, was a suit to foreclose a mortgage made on the homestead by husband and wife. The court sustained a demurrer to the petition, holding that it came within the inhibition of the Constitution, that the homestead of a family shall not be subject to forced sale for debts hereafter contracted. The court say:

" A forced sale is one made under the process of the court, and in the mode prescribed by law. The plaintiffs seek to enforce the lien of the mortgage, and effect the sale of the property under the compulsory process of the court, and in the time and mode prescribed by law, and this certainly comes within the definition of a forced alienation. It is true that the debtors have voluntarily pledged the property as a security for the debt, and have agreed by implication to what, under ordinary circumstances, would have been its necessary legal effect, viz.: that the property should be subjected to a decree of sale and foreclosure.

" But they cannot waive or renounce the guarantee or immunity with which the Constitution shields the property. They cannot impose upon the court the obligation, or confer the power of decreeing the sale of the property which is expressly exempted from the operation of a forced sale or sale by judicial process. They can, if they choose, alienate it voluntarily. They are not deprived of the power of parting with their property; but their agreements cannot have the legal effect of changing a sale under an execution into a voluntary alienation of property; nor can they require of courts to enforce agreements, the object of which is to expose the property under the protection of the Constitution, to forced sale."

After discussing the power of the Legislature to pass an act to dispossess the owners of their homestead, for the satisfaction of debt, out of the rents and profits, the court further say :

" The Constitution obviously intended that the homestead should be exempted from the operation of any species of execution, or from any forced disposition of the property, whether partial or total, which would disturb the family in the quiet and uninterrupted possession of their home, with the property thereto attached. The beneficence of the provision has a much wider range than to protect the family from a sale which would utterly extinguish all right to the property. . It shields them also from any extents or deliveries of the property, or from any forcible appropriation of its rents, issues or profits. It protects the domestic sanctuary from every species of intrusion *which, under color of law, would subject the property, by any disposition whatever, to the payment of debts.*"  (P. 117.)

The chief justice further says : "The homestead cannot be affected by any species of compulsory disposition, but, with the assent of the wife, it may be transferred or encumbered in any mode deemed judicious or advisable. She may assent to an absolute sale for money loaned, or for a previous indebtedness; and,

for the like consideration, she may assent to a mortgage, with a power of sale by the mortgagee, in default of payment. A mortgage depending for its enforcement on judicial process, would be ineffectual, because a sale under such process would be forced. But a sale under a power in a mortgage or trustee would be voluntary, and the assent of the wife would give as much validity to such mortgage as an absolute and immediate sale." (P. 118.)

The latter part of this opinion was not called for by any fact or question before the court. It was merely *obiter*, and I know no opinion which has been so unsatisfactory to the legal profession, more technical or illogical, or wanting in that spirit which looks to the substance and spirit of the law, and not to mere form. " Forced sale " should have been held to mean any compulsory disposition, and not compulsory disposition by legal process. It is true that the power of sale, added to a mortgage, was voluntary at the time when given. But if this put it out of the power of the grantor to withdraw the power, and gave the absolute right to sell, above or against the will of the owner of the homestead, this was a forced sale. It was just as voluntary to agree that the court should sell as that a mortgagee or trustee should sell, and equally forced for the latter to have the compulsory power of sale as the court.

Besides, recognizing the great and important policy of protecting the homestead from liability for debt, from the power of the courts of the country, and then to turn round and say that by addition of "a power of sale" to a mortgage, or by making it a trust deed, this immunity was entirely destroyed, and a power of sale could be given to John Doe and Richard Roe, which could not to the courts, seemed most illogical and inconsistent.

This decision has doubtless prevailed too long, as a rule of property, to be now legitimately attacked; but I have never heard a lawyer discuss it who did not consider it an unnatural excrescence in our legal system.

In accordance with the above, the whole series of subsequent decisions have been, that the homestead can never be subjected to sale, by order or process of a court, upon any species of lien.

As not to enforce a judgment lien on land, or while the homestead was established subsequently to the lien. (Stowe v. Darnell, 20 Texas, 14.) Nor to enforce specific performance on a bond for title in which the wife joins, if it continues the homestead. (Brewer v. Wall, 23 Texas, 589.) Nor by an absolute deed, where bond for title to reconvey was given, saving the effect of a mortgage. (Baxter v. Dear, 24 Texas, 17.)

In Bomback v. Sykes, 24 Texas, 218, an injunction against sale of homestead by trustee under a deed of trust was dissolved, and the court ordered the trustee to sell. Judge Wheeler says: " Being a homestead it was exempt from forced sale, and the court erred in adjudging the sale of the property under compulsory process from the court. The proper judgment would have been a dissolution of the injunction, thereby enabling the trustee to proceed to sell in accordance with the power contained in the deed. It is also settled that under a trust deed or mortgage of property not the homestead, with power of sale, after the death of the husband, the power cannot be exercised by the trustee, but the debt must be presented to the probate court and its order obtained for the sale." (Robertson v. Paul, 16 Texas.)

The clear result of our decisions is that a trust deed on the homestead, with power of sale from husband and wife, may be enforced if it can be done in the manner and by the party specified. It is a special power of alienation to which the debtors are bound according to their contract, and which the creditor risks according to his contract; but if it becomes necessary, for its enforcement, to appeal to legal proceedings, then the inhibition of the Constitution against the forced sale of a homestead stands, inferentially, in the way.

It is a power of sale coupled with an interest which may be ex-

ercised so long as the power remains in force.    But in case of
death then the law prohibits the exercise of the power, both by the
trustee and by the process of the court; and we say that in this
case the creditor with his first mortgage on the homestead had no
remedy except to petition the probate court for an order of sale,
which could not have been given without express violation of the
Constitution, and therefore the homestead ceased on the death of
Thorp to be subject to the trust deed.

In the next place the right of the widow and children to the
homestead, by proper construction of the act regulating estates of
deceased persons, is superior to that of any trust or lien creditor,
except the holder of a vendor's lien, who is recognized as the un-
paid and paramount owner.    The statute (Paschal's Digest, Art.
1305,) provides:    "At the first term of the court after an invento-
ry and list of claims have been returned, it shall be the duty of
the chief justice to set apart, for the use and benefit of the widow
and children, all such property as may be exempted from execu-
tion or forced sale by the Constitution and laws of the State, and
in case there should not be among the effects of the deceased all
or any of the specific articles so exempted, it shall be the duty of
the chief justice to make an allowance in lieu thereof to the
widow and children."

What is the property exempt from execution and forced sale by
the Constitution and laws?    *Inter alia:*    "The homestead of the
family."    The law therefore expressly provides that it shall be the
duty of the court to set apart "for the benefit of the wife and
children" the homestead of the family.    This requirement is ex-
plicit and positive.    The creditor has notice of it and deals with
reference to it.    He knows, when he takes a security on the home-
stead, that in case of the death of the husband it must be set apart
for the benefit of the wife and children, and his privilege must
cease.

The rights of the creditor are subordinate to the paramount

right, firmly granted in the letter and firmly sustained in the construction of our laws, of the homestead to the widow and children. To show that this right is superior to all liens of creditors by contract, turn to article 1339, fixing the priority of payments out of the funds of the estate.

*John W. Harris*, for the appellees.—It is contended by the counsel for the appellants that as Article 1339, Paschal's Digest, (Art. 783, of Oldham & White,) prescribing the order for the payment of debts, give the widow's allowance priority over the payment of creditors having a lien, she should in this case be confined to the homestead upon which she and her husband had given a valid deed of trust, to secure the payment of a debt which amounted to more than three thousand dollars over the appraised value of the homestead tract, and that she can take no other property at its appraised value.

Now, we submit that it could not be the intention of the statute to give to her such priority over a secured creditor where there was other unencumbered property, sufficient to satisfy the allowance or claim of the widow. This section of the statute evidently contemplates that creditors, having a lien, shall be paid, at least to the extent of the property on which the lien exists. Besides, we think that it is fairly inferable this priority was intended to be given only in the case of an ordinary mortgage, given by the husband, or acquired by "judgment or execution, or otherwise," meaning by the word "otherwise" from its connection with a lien acquired by operation of law, and in which it is contemplated that the lien is to be enforced by legal proceedings or by the officers of the law. Would it be reasonable to suppose that such priority was intended to be given in a case like the present, in which the husband and wife had given a valid deed of trust upon the property, fully authorizing the trustee to make a sale and conveyance of it, without the aid or intervention of the court? If that contract was

binding upon the wife as a *feme covert*, why should it not be now binding upon her as a *feme sole?* Would she (if she desired to do so) be now permitted to wantonly violate it, when there was a sufficiency of other and unencumbered property to satisfy and extinguish her claim? Would this court, under any circumstances, (even if it could be done) desire, by its decision, to compel a party to violate a legal and binding contract? Would not the court be especially unwilling to do this at the instance of a creditor, who had exercised no vigilance, to the prejudice of another creditor, who had used the utmost vigilance known to the law to protect himself?

The counsel for the appellants take the position that as this was a deed of trust upon the homestead, and as John L. Thorp, one of the makers of the deed, died before the sale of the property, the secured creditor has now no remedy for the collection of his debt; that the homestead could not be sold by an order of the Probate Court, for that would be repugnant to the Constitution of the State. To sustain this position they cite, among other authorities, the case of Sampson & Keene v. Williamson, 6 T. R., 110, *et seq.*

That was a case of an ordinary mortgage, containing *no power to sell.* Even in that case one of the court (Judge Wheeler) dissented from the opinion of the other two, while the majority make a clear distinction between such a mortgage and one containing a power to sell, or a deed of trust. The majority of the court there say: " If this husband and wife make a mortgage, depending for its enforcement on judicial process, it would be ineffectual, because a sale under such process would be forced. But a sale under a power in a mortgagee or trustee *would be voluntary*, and the assent of the wife would give as much validity to such mortgage as an absolute or immediate sale." See the case, page 118. It may be here remarked that this decision was made nineteen years ago,

and that contracts have been made and rights have been growing up under it ever since.

It is further contended on the part of the appellants that if the wife with her husband voluntarily subjects the homestead to a forced sale, which was exempt from execution, she ought to suffer therefor and not the creditors.

In reply, we say that the husband and wife had the right to make an absolute sale and conveyance of the homestead without in anywise impairing her right to her allowance out of the residue of the property. Should, then, doing less than to make an absolute sale, subject her to such punishment?

We further and respectfully submit that the deed of trust being a *quasi* alienation of the property or, at least, the granting to the trustee an irrevocable power to alienate it in default of payment at the maturity of the debt; and having been made with the consent of the wife in the manner pointed out by the Legislature, it can in no sense be said to be a forced sale; but is, to all intents and purposes, " a voluntary sale," in contemplation of law and of the Constitution. But we are told that though this deed of trust of the husband and wife upon the homestead was valid when made or executed; still it is now invalid since, by the death of the husband, we have lost our remedy for its enforcement. In other words, that this contract, legal and binding when made, dies in this solitary instance with one of the makers of the deed; or, that we have a right but no remedy, while it is the boast of the common law that there can be no right without a remedy.

It is, we believe, conceded by all that if the husband and wife were both living the trustee would sell and convey the property (the homestead inclusive) in payment of the debt. The position taken for the appellants seems to lead to this result, viz.: While the husband lives and wants the homestead, it can be taken away from him under the deed of trust; when he dies and neither wants

nor needs it, then it cannot be taken. What a mockery! How absurd!

It has been decided by this court that if the husband and wife give a mortgage upon the homestead in a suit to foreclose, the wife must plead the homestead exemption (and must not rely upon the promise of her husband to plead it), else the judgment of foreclosure will be binding upon her, and the sale of the homestead under it will be valid. (See Baxter v. Dear, 24 T. R., 17.) If the wife will lose her right by her failure to plead, cannot the widow, a *feme sole*, waive or abandon her right (if any she had) in a case like this?

Again, the husband gave his bond to convey the homestead of himself and wife at a future day. They moved away from it. In a suit on the bond the old homestead was recovered, the wife having not entirely abandoned it. (Allison and wife v. J. C. Shilling, 27 T. R., 450.)

The appellants further contend, that the allowance to the widow was excessive. There is certainly no evidence in the record to sustain this position. She took property at its appraised value in the inventory, in accordance with the provision of the statute.

WALKER, J.—In his lifetime John L. Thorp was indebted to Straus & Co., to the amount of about $10,000. To secure the payment of which sum, joined by his wife, he executed the ordinary deed of trust, with power of sale, to G. Baer. The debt, it seemed, was not due, nor did it mature in the lifetime of Thorp. After his death the wife, in probable ignorance of her rights, and supposing she could not hold the lands on which the trust deed had been given, applied to the county court for an allowance, in lieu of her homestead, to be made to herself and a young minor child. The court made her an allowance of $2000. This was afterwards satisfied by her taking, at its appraised value, six hundred and forty acres of land belonging to her husband's estate; and

she appears to have thus abandoned her right to the original home-stead. Hers was a preferred right, if unencumbered for the purchase money. In Robertson's Administrator v. Paul, 16 Tex., 472, the court say : "A power to sell, contained in a mortgage or deed of trust given to secure the payment of a debt, although not revoked on general principles, by the death of the constituent, is inconsistent with our statutes respecting the settlement of estates of deceased persons, and therefore cannot be executed after the death of the constituent."

"The funeral expenses, expenses of the last illness, of adminis-tration, the allowance to the widow and children, and the expenses incurred in the preservation, safe keeping and management of the estate, have preference over a specific lien created in the life time of decedent, except where such lien is for the purchase money. The principle is recognized that the payment of the purchase money is the essential constituent of title to real estate."

We have thus transcribed the decision in this case, that it may again be placed before the profession, and it is hoped may prevent any further litigation of this long settled question.

The action of the county court was erroneous, and that of the district court not less so, and worked great injustice to the credi-tors. Straus & Co. stood on no better footing for the payment of their debts than other creditors. They took their mortgage lien after the law had been well settled, and took the chances of being cut out by the contingency which has happened.

Mrs. Thorp is entitled to a homestead of two hundred acres, with the improvements appertaining, to be selected by her as a homestead, and no more.

The judgment of the district court is reversed, and cause re-manded.

Reversed and remanded.