JOHN MᴄALISTER, EXECUTOR, ET AL. v. FARLEY, JURY & Co.

1. Land purchased and paid for by the husband after the death of the wife, with money belonging to the community estate, is community property, and is held by the surviving husband as a tenant in common with the children of his deceased wife.
2. The act of August 15, 1870, does not confer on the surviving children, as against creditors, a right to a homestead out of the deceased father's separate estate, if they had a homestead fixed and determined in the lifetime of the father on the community estate.
3. Ragland v. Rogers, 34 Texas, 622, qualified.
4. The children of a deceased father are entitled to a rural homestead of two hundred acres out of the individual interest of their father, in land,

if there was no homestead fixed and established at the time of his death.

5. Where a tenant in common has attempted to sell his interest in an estate by metes and bounds, equity will assign the purchaser the same, on partition, if it can be done without injury to the shares of the co-tenants; and this especially when he has made improvements in good faith.

Appeal from De Witt. Tried below before the Hon. D. D. Claiborne.

This suit was brought by Farley, Jury & Co. against the children of Alexander McAlister, deceased (three of whom were minors), and John McAlister, as executor of the estate of Alexander McAlister, and H. Clay Pleasants, for the purpose of establishing a judgment rendered in the District Court for De Witt county against Alexander McAlister, before his death, and in favor of the plaintiffs, and for the purpose of enforcing payment of the same, by sale of certain lands described in the petition. For that purpose they prayed partition of two tracts of land between the executor and the children of Alexander McAlister.

The judgment of Farley, Jury & Co. was rendered on the twenty-ninth day of of September, 1869. H. Clay Pleasants had a judgment in his favor against Alexander McAlister prior to the rendition of the judgment of the plaintiffs; both of these judgments, it was claimed, operated as liens upon the interest of Alexander McAlister in the two tracts of land. The children of Alexander McAlister claimed one-half of both tracts of land by inheritance from their mother, who died in 1857, and during whose life a tract of land granted to Andrew Neil was purchased by Alexander McAlister; and thereon she and her husband and children lived at the time of her death. Another tract of land was bought soon after the death of the mother, with money which, the defendants alleged, belonged to the community estate of their father and mother. The dwelling house was upon the first tract

purchased, but only a few varas from the line of the two tracts. Immediately after the purchase of the smaller tract of land it was enclosed, a portion put in cultivation, and so continued by Alexander McAlister until the time of his death. A school house was erected thereon, in which, for many years, the father maintained a private school for the education of his children.

Alexander McAlister continued to live upon the two tracts of land with his children until the time of his death, and the children lived there until the time of the trial. John McAlister claimed title to a specific tract of land out of the Andrew Neil grant, by a conveyance for valuable consideration from Alexander McAlister, the father, to him, made prior to the rendition of the judgments in favor of plaintiffs and Pleasants against him, but which, although deposited in the office of the county clerk for De Witt county, immediately after the same was executed (September 15, 1868), was not recorded until after the judgments were obtained. The children claimed one-half of both tracts of land by inheritance from their mother, and also a homestead of two hundred acres of land out of the interest of the father in the two tracts, by reason of their right to the property of the father exempt by law from forced sale, the estate of the father being insolvent.

They alleged and proposed to prove, that at the time of the death of the mother, the community estate of the father and mother was in no manner indebted; that they had not received any advancement whatever from the father or from his estate; that the smaller tract of land was bought with money that belonged to the community estate of the father and mother; that the debts upon which appellants obtained their judgments were not community debts, but that they were upon separate debts of the father, in no manner incurred for the benefit of his chil-

dren or their estate; that the estate of Alexander McAlister was insolvent; that the money received by the father for the tract of land sold to John McAlister was not used for the benefit of his children or their estate; that the sums derived from the product annually of one-half of the community estate had been sufficient to support and educate the children, since the death of the mother; that there had been no administration upon the estate of the mother, and that the father had not qualified under the statute by filing an inventory, etc., to manage and dispose of the community estate; which testimony, upon the objection of the appellees, was ruled out, and the appellants excepted.

The cause having been submitted to the court upon facts as well as the law, the court adjudged that John McAlister be quieted in his title to the land claimed by him; that the children, or their guardian, select a homestead of two hundred acres of land out of one or both tracts of land; that the residue of both tracts be divided into two equal portions, one of which the children should have, and the other should go into the hands of the executor, to be sold to satisfy the judgments described in the petition of Farley, Jury & Co.; and in case the children elected to take as part of the homestead the whole or any part of the smaller tract of land, that then the executor should have set apart to him, in addition to his one-half of the larger tract—after deducting the homestead of two hundred acres and the land sold to John McAlister—such quantity of such larger tract as would be equal in value to the part of the smaller tract so selected as part of the homestead. The judgments of Farley, Jury & Co. and of Pleasants were established as claims against the estate of Alexander McAlister; commissioners were appointed to make partition, and the executor was directed to sell before the next term of the

court the share of the land that should be allotted to him. From this judgment the appeal was taken.

The following assignments for error were relied on :

1. The court erred in sustaining the exceptions of the plaintiff to the evidence offered by the defendants (before referred to).

2. The court erred in rendering a moneyed judgment against John McAlister, executor.

3. The court erred in decreeing the tract of $102\frac{6}{10}$ acres to be the separate estate of Alexander McAlister, and by decreeing that if defendants elected to take the same as a part of the homestead, that then the value of such tract, or so much thereof as should be so selected, should be deducted from the interest of the children of Alexander McAlister in the Andrew Neil survey.

4. The court erred in not decreeing to the children of Alexander McAlister a homestead of two hundred acres of land out of the interest of Alexander McAlister in the two tracts of land.

5. The court erred in directing the sale of any part of the land named in plaintiffs' petition prior to confirmation by the court of the report of commissioners appointed to partition the same.

*Phillips, Lackey & Stayton*, for appellants, cited Neil v. Keese, 5 Texas, 23 ; Paschal's Digest, Articles 4642, 1316 ; Wilkinson v. Wilkinson, 20 Texas, 214 ; Burleson v. Burleson, 28 Texas, 419 ; Story's Eq., 656 ; McKey v. Welch, 22 Texas, 396; Act 15th of August, 1870 ; Ragland v. Rogers, 34 Texas, 622 ; Blair & Co. v. Thorp, 33 Texas, 49 ; Sossaman v. Powell, 21 Texas, 665.

*H. Clay Pleasants*, for appellees.—We submit that the evidence was properly excluded by the court. The second assignment we will not discuss. The third assignment assumes that it was error in the court to hold the

tract of land purchased by Alexander McAlister, after the death of the mother of the defendants, to be his separate·property, and decree that if the defendants should elect to take this tract as. a part of their homestead, an equal portion of their moiety of the community property should be sold in satisfaction of plaintiffs' judgment and the judgment of defendant Pleasants. This decree, we submit, was eminently proper and in full accord and harmony with the spirit and object of the law exempting the homestead from forced sale. The position of the appellants on this point is that their right to select a homestead from any portion of the lands owned by their father at the time of his death, irrespective of any selection which may have been made by their parents, is unquestionable. With us it is very questionable whether any such right belongs to the children of deceased parents. It has been said by this court that the surviving husband or wife is not restricted to the particular lot or parcel of land occupied by the husband and wife during the existence of the marriage ; but that such survivor may alter or change the homestead previously established. But this court has never decided or intimated, that we are aware of, that this right belongs to any member of the family other than the head.

We submit that if the parents have established a homestead for themselves and family, upon the death of both parents the children take the homestead selected and established by the parents, without any right on their part to alter or change the same, provided it be of the size or the value guaranteed by the Constitution. If the parents have made no selection upon their death, the court— if there be assets of the deceased parents—will furnish the minor children with a homestead. Now, in the case at bar there can be no question but that Alexander McAlister and his wife, the mother of the defendants,.

did establish their homestead on their community lands, and that the same continued ever after to be the homestead of the said Alexander and his family.   But let us admit that the court was correct in conceding that the appellants had the right to select a homestead from any part of the lands in question.   Is this an absolute right—one not to be restrained or controlled in its exercise? Surely not.   But like any other right, is not to be exercised to the injury of others.

These children had inherited a homestead from their parents, and thus the requirements of the law had been fully answered.   Upon the death of their mother, they took an undivided half of the community real estate of their parents; they became equal owners, in right of their deceased mother, with their father of the homestead; and had a partition of the community lands been made during the life of Alexander McAlister, between himself and his children, he would have received one-half and they the other half.   Neither he nor they had any exclusive right to that portion of the community estate which embraced the homestead.   Upon the death of Alexander McAlister, his children inherited his interest in the homestead.

WALKER, J.—Two grounds of error are insisted on in this case.

1. That the court erred in refusing to hear evidence going to show that the land last purchased after the death of the mother of the appellants was bought and paid for with money belonging to the community estate.   This evidence was material ; and if the fact were proven conclusively, then it was error in the court to hold that the land was the sole and separate property of the husband. So far as community funds were used in the purchase of this land, it was community property, and Alexander Mc-

Alister was but a tenant in common with his children. (Neil v. Keese, 5 Texas, 23.)

This is but the common doctrine of trusts: where one purchases with funds belonging to another and takes the title to himself, he holds it in trust for him who furnished the money ; and where but part of the money is furnished, the equity attaches *pro tanto*.   (Art. 4642, Pas. Dig.)

We will treat the second point urged in connection with other questions involved in the case.

After much consideration we are of opinion that the act of August 15, 1870, would not entitle the appellants to a homestead out of their father's separate estate, if they had a homestead fixed and determined in the lifetime of the father on the community estate.

The law contemplates but one homestead to a family, and we do not think it was the intention of the Legislature to allow the surviving constituents of a family, where the homestead has been fixed upon community property, of which such constituents may be part owners, on the death of the head of the family to change the homestead so as to take the entire allowance out of the share of the last community holder, if it should operate to the prejudice of creditors or purchasers.

They are entitled to what the law protected to the head of the family from forced sale, viz., the homestead ; and though this homestead belonged in part to the appellants in this case by inheritance from their mother, they could not during his lifetime have deprived their father of his homestead by partition or sale.   It was this homestead which the law protected, and it is this which must go to the surviving constituents of the family.

But another question arises in this case.   Upon the theory that Alexander McAlister and the appellants were tenants in common in the whole of the lands described in the petition, then the father could not have sold any

given part of the land by metes and bounds to John Mc-Alister.

The lands must first be partitioned ; and after the homestead is set apart to the children, John McAlister 'must have his land out of the share which would have belonged to Alexander McAlister. It is, however, a well known principle of equity that where one tenant in common has attempted to sell his interest in an estate by metes and bounds, equity will assign him the same on partition, if it can be done without injury to the shares of the co-tenants, and especially is this the case where the purchaser of the one interest has made improvements in good faith.

This, then, sufficiently explains the law of this case : if all the lands are community property, the children are entitled to their mother's interest in it; if the homestead was fixed upon community property, they hold it as fixed and established by their father. In other words, the homestead in that case will be taken out of the community estate, and the remainder will be partitioned.

But if there was no homestead fixed and established during the lifetime of the father, then under the act of August 15, 1870, the children will be entitled to a homestead of two hundred acres out of the individual share of their father.

Should it be found that this opinion is in conflict with Ragland v. Rogers, 34 Texas, 622 ; Blair v. Thorpe, 33 Texas, 49 ; or Sossaman v. Powell, 21 Texas, 665, those cases must be considered modified so far as to conform to this case. We do not think, however, the principles decided are in conflict.

It is true a majority of the court is understood to have decided in Ragland v. Rogers, that "the widow of a decedent is not compelled to accept as the homestead the identical premises which were the homestead before her husband's death ; she has the right to select out of the

entire estate the homestead to be set apart for herself and children."

This doctrine should be understood to apply only where the rights of creditors and purchasers from the husband are not prejudiced by such a change of the homestead *locus*, or where the homestead occupied before the death of the husband does not include the full allowance.

The view we have taken of this case involves the necessity of reversing and remanding, which is accordingly done.

REVERSED AND REMANDED.