THOMAS et ux. v. ASH.   (No. 188.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 24, 1917. Rehearing Withdrawn Dec. 12, 1917.)

1. ADVERSE POSSESSION ⬥⟹58 — ADVERSE HOLDING—SUFFICIENCY OF EVIDENCE.

Where, after having paid for land, defendants were informed by the vendor that he could not give a deed, as the land belonged to a certain third person, defendants could not acquire title under the 10-years statute of limitations, as against such person, without setting up a claim adverse to him.

2. ADVERSE POSSESSION ⬥⟹112—BURDEN OF PROOF.

Since no presumptions are indulged in favor of one claiming title by limitation, he has the burden of proving every essential fact in connection with his possession and claim.

3. VENDOR AND PURCHASER ⬥⟹258 — INCUMBRANCE—SIMULTANEOUS TRANSACTION.

Defendant, on purchasing land, gave notes for part of the purchase price. Part of the purchase money represented by the notes not having been paid, defendant, who was also indebted on other accounts, gave the vendor renewal notes in full for the entire indebtedness. As a part of the same transaction, defendant and wife, who were then claiming the land as a homestead, executed a deed to the vendor, who in turn gave a deed to defendant husband, retaining a vendor's lien for the amount of the renewal notes. *Held*, that a purchaser of the notes was entitled to judgment for the amount of the notes, but would be given a lien on the land only for the amount of the purchase money due when the notes were given, he having actual knowledge by recital in the notes of the deed by defendant and wife and the deed by the vendor to defendant.

Error from District Court, Panola County; W. C. Buford, Judge.

Suit by R. P. Ash against Rich Thomas and wife. Judgment for plaintiff, and defendants bring error. Affirmed in part and reversed and remanded in part, with instructions.

H. N. Nelson and Frank Lawson, both of Carthage, for plaintiffs in error. J. G. Woolworth and R. W. Priest, both of Carthage, for defendant in error.

HIGHTOWER, C. J. This cause was brought to this court by writ of error from a judgment of the district court of Panola county. R. P. Ash, who is defendant in error, filed suit in the district court of Panola county on March 18, 1915, against Rich Thomas. The cause of action was as follows:

On November 18, 1910, plaintiff in error Rich Thomas executed and delivered to one R. E. Trabue his certain four promissory notes, the first three being for the sum of $150 each, and the fourth for the sum of $152.61, said notes to become due on the 1st day of October, 1911, the 1st day of October, 1912, the 1st day of October, 1913, and the 1st day of October, 1914, respectively, and each bearing interest at the rate of 10 per cent. per annum from date, the interest payable annually, and stipulating for 10 per cent. on the amount of the principal and interest that should be due as attorney's fees for collection in case suit should be brought, etc. Default in the payment of the notes or any part of same was alleged, and judgment was prayed for the full amount of same, together with interest and attorney's fees. It was further alleged in the petition of defendant in error that the notes mentioned and sued on were given for the purchase money of a certain tract of land situated in Panola county, a part of the A. M. Witherspoon survey, which 50-acre tract is fully described in the petition, and it was alleged that said 50 acres of land was conveyed by the said Trabue to the said Rich Thomas on the day that said notes were executed, and that a vendor's lien was retained in the deed from Trabue to Thomas to secure the payment of said notes, and that, in fact, said notes were secured by a vendor's lien, which was prayed to be foreclosed, etc. It was further alleged that defendant in error had become the owner of all of said notes for value and before maturity as well as the lien by which the same was secured.

In due time the plaintiff in error Rich Thomas, as defendant below, filed his answer, and in the answer he was joined by his wife, Mary Thomas, who made herself a party defendant to the suit. The answer consisted of a general demurrer, general denial, and the following special plea:

"And for further special answer herein, these defendants would show that they are man and wife and have been living together as such for over thirty years; that they bought the land described in plaintiff's petition about 1889, and they, with their children, moved on said land in January, 1889; that they paid $150 for said land, and paid the cash for same, the second year after they went on it; that when they went on said land in January, 1889, they began to claim the same, and have at all times claimed said land; that they paid for said land, and were told, as they were in possession of the same, they could hold it; that they did not get a deed, and they, being ignorant and uneducated negroes, knew no better, but they lived on said land from January, 1889, to the present time, and are still living on the same; that they had lived on, used, cultivated, and claimed said land as their own from the 1st of January, 1889, up to the 20th day of December, 1901, more than ten years; that said land and place was and is their homestead; and that on the 20th day of December, 1901, their title to said land and premises was perfected by the statute of limitations of ten years; that in December, 1901, R. E. Trabue, claiming some kind of a deed against the defendant, Rich Thomas, sued him, and levied some kind of a writ on his cotton; that he, being an ignorant negro, did not know what to do, and said Trabue told said defendant that if he would pay or give him $157.50, that he would make him a deed to his land, that if he did not that he was going to take it from him; that he was ignorant and knew no better, and agreed to do so, and did pay the said amount; that said Trabue made the deed, and recited in the same, as a part of the consideration, three notes; that he never executed any notes; that being unable to read, and believing the deed to be all right, did not have it read and examined; that in the latter part of the year 1910 the said Trabue promised the defendant, Rich Thomas, that if he and his wife would give him a mortgage on their crop for 1911 and on the mules, that he would furnish him supplies for the year 1911 and sell him a pair of mules; that he and his wife signed what they thought was a mortgage on their crop for 1911 and the mules they were to get from the said Trabue, but which defendants now believe was a deed to their home; that they are both very ignorant negroes and can neither read nor write; that the said Trabue never made to them any deed to said land for the notes sued on in this suit or for anything else; that the defendant Rich Thomas has no recollection of signing said notes, but, if he did, they were made without consideration, as the said Trabue never made to them a deed for the land; that said land did not belong to the said Trabue, but the title to the same was in these defendants and it was their homestead; that the plaintiff in this case knew, or by the use of ordinary diligence could have known, that said notes were void when he bought them; that these defendants were living on said land at the time and had been since January, 1889, claiming the same as their homestead; that said notes are dated the same day of the deed that these defendants purport to have made the said Trabue, which was sufficient to put the said plaintiff on notice of defendants' rights and their claim to said land. Wherefore these defendants pray that on a trial of this cause they have judgment canceling said notes and the deed purporting to have been made by them to the said Trabue, and that the plaintiff take nothing herein, and that they recover all costs of suit, and they pray for all special and general relief the facts may show they are entitled to."

This special plea was verified by the plaintiff in error Rich Thomas.

Defendant in error replied by supplemental petition, among other things, that the notes sued on were purchased in good faith and for valuable consideration, and without notice of any fact that would vitiate the notes, and

was entitled to be protected as an innocent purchaser of said notes, and alleged lien given to secure them, etc.

The cause was tried before the court without a jury, and resulted in a judgment in favor of defendant in error against plaintiff in error Rich Thomas for the sum of $988.47, which was the amount of the four notes sued on, together with the interest and attorney's fees due thereon, as prayed for by the defendant in error; also judgment was rendered in favor of defendant in error as against both defendants, foreclosing the claimed vendor's lien on the land described in defendant in error's petition, and ordering same to be sold in satisfaction of the judgment, etc.

Plaintiffs in error in due time filed their motion for new trial, and in several ways complained of the judgment of the trial court, in so far as the same established a lien upon the land in question, but no complaint was made of the action of the trial court as to the personal judgment against the plaintiff in error Rich Thomas. The motion for new trial was in all things overruled, the action of the court duly excepted to, and such action is here duly assigned as error.

The trial judge filed findings of fact and conclusions of law as follows:

"Findings of Fact.

"First. I find that the uncontradicted evidence shows that the plaintiff is the legal owner and holder of the four notes sued upon in this case.

"Second. I find that the four notes sued on in this case are dated on the 18th day of November, 1910, and that they amount in the aggregate to the sum of six hundred two and $^{61}/_{100}$ dollars, and that said notes bear interest from their date at the rate of ten per cent. per annum, and that they further provide for the payment of ten per cent. additional on the principal and interest due on said notes as attorney's fees, and that the said notes recite that they were given for the purchase money for the lands described in plaintiff's original petition filed herein, and that said notes were so given as the purchase price of the said land.

"Third. I find that the defendants, Rich Thomas and Mary Thomas, on the 18th day of November, 1910, made, executed, and acknowledged a deed to R. E. Trabue, conveying the lands in controversy, and that this deed is recorded in the deed records of Panola county, Texas, in vol. 22, page 336, and that the consideration and payment of three certain vendor's lien notes given by Rich Thomas to R. E. Trabue, two of said notes for $75.00, and one of said notes for $112.30, said notes being a part of the purchase money of the lands described in this suit, said notes being dated December 20, 1901, and that the said notes provided for the payment of interest at the rate of ten per cent. per annum from their date, and I find that only the sum of $51.00 was paid upon the said notes and interest, and that this payment was made on the 20th day of October, 1902, and that plaintiff had no notice of this.

"Fourth. I find that on the 18th day of November, 1910, R. E. Trabue executed a deed to Rich Thomas, conveying the land in controversy in this suit, and that in said deed the notes sued upon herein were recited, and that the notes were given for the purchase price of the said land, and that said notes reserved a lien upon the land in controversy; and I further find that the deed from the said R. E. Trabue

to Rich Thomas was not placed of record, and that the plaintiff, R. P. Ash, had no notice of such deed, either actual or constructive.

"Fifth. I find that the plaintiff, R. P. Ash, purchased the four notes sued upon in this case from R. E. Trabue, before maturity, and that he paid the face value of the notes therefor, and that at the time he purchased the said notes the said Ash had no knowledge of any defect in the notes, or that the defendants were claiming the said property as their homestead.

"Conclusions of Law.

"I conclude as a matter of law that said notes, having been given for the purchase price of the land described in plaintiff's petition reserving a vendor's lien upon the said land for their payment, are valid and subsisting obligations, and that the lien is valid and subsisting, and that the plaintiff, R. P. Ash, is an innocent purchaser of the said notes, having paid value before maturity for the same, and that therefore the plaintiff is entitled to a judgment for the full amount of the said notes, interest, and attorney's fees, and that the vendor's lien as it existed on the 18th day of November, 1910, be foreclosed to satisfy the same, and judgment will accordingly be entered."

The first assignment of error challenges the correctness of the trial court's judgment, in so far as the same ordered a foreclosure of the lien claimed by defendant in error upon the ground that the judgment in that respect was contrary to the law and the evidence, for the reason that the uncontradicted evidence showed that the defendants bought the land from one E. A. Hull in December, 1889, and went into possession of the same, and claimed the same and paid the consideration therefor to Hull, and that their title was perfected by the statutes of limitation of 10 years before the deed was made by R. E. Trabue to Rich Thomas on December 20, 1901. The proposition under this assignment is as follows:

"A person buying 50 acres of land, and goes into possession, pays the price, and lived on the land from December, A. D. 1889, until December the 20th, 1901, 12 years, and said occupancy continued openly, adversely, peaceably, being more than 10 years, and claimed as a homestead, then the said land would become the homestead, and the husband would have no power to sell the same or to waive the homestead right of his wife therein without her consent given in writing as required by law."

It appears from the record in this case that in the early part of 1889, perhaps in January of that year, the defendant Rich Thomas paid to one E. A. Hull $150 for the 50 acres of land here in question, with the understanding that Hull was to make him a deed for this land; that on the next day Hull told Thomas that he could not make him a deed to the land, for the reason that he (Hull) did not own the land, but that the land was owned by Mr. Trabue. The record is silent as to any further transactions between Rich Thomas and Hull in connection with the sale and purchase of this land, but it is shown that thereafter, though the record is indefinite as to time, R. E. Trabue agreed to sell Thomas this 50 acres of land, and negotiations between them looking to that end were commenced, and resulted in

Trabue's selling the land by deed to Rich Thomas on December 20, 1901.

[1] At that time, and for several years, perhaps, prior to that time, Rich Thomas, with his family, was residing upon this tract of land; but the record fails to disclose that Rich Thomas, after being informed by Hull that this tract of land belonged to Trabue, ever set up any claim to the land which was adverse to Trabue, and, indeed, the record is clearly insufficient to show that the possession of Thomas and family of the tract of land in question from the time that Thomas paid Hull for the land, and up to the time that Thomas again bought the land from Trabue, was of that adverse character as to Trabue which would perfect title in Thomas as against Trabue under the statute of limitation of 10 years.

[2] We understand the rule in this state to be that no presumptions are indulged in favor of a claimant of land seeking to acquire title by limitation, but that the burden is upon such claimant to prove every necessary or essential fact, in connection with his possession and claim, which go to make up or give title by limitation; and, since that burden is not shown by this record to have been met we overrule the first assignment without further discussion.

The second assignment of error is as follows:

"The court erred in foreclosing the lien on the land because the uncontroverted facts show that the land was the homestead of defendants, and the uncontroverted facts show that some of the amount expressed in said notes was not a part of the purchase money for said land, and the plaintiff failed to prove what amount of said notes was for the purchase money due, if anything, on said land."

[3] The proposition under this assignment is, in effect, that where a note sued on is shown to have been given partly for merchandise or other matter, the court should not enforce a vendor's lien, although part of the note may be for payment of land, unless the exact portion of the note given for the land be shown. This assignment requires a brief statement, at least, of some of the transactions between R. E. Trabue and Rich Thomas. As stated above, when R. E. Trabue sold the 50 acres of land in question to Rich Thomas, on December 20, 1901, Thomas executed three notes evidencing a part of the purchase money therefor, the three notes so executed amounting to $262.30, which said notes were made payable one, two, and three years, respectively, after date, and bore interest at the rate of 10 per cent. per annum from their date, and further provided for ten per cent. additional as attorney's fees if they should be placed in the hands of an attorney for collection, etc. It is certain from the record that all of the purchase money for this land, as evidenced by these three notes executed in December, 1901, was never paid by Thomas to Trabue, and that a large

199 S.W.—43

portion of this money was due and payable to Trabue on November 18, 1910, at the time Rich Thomas and wife, Mary Thomas, executed to R. E. Trabue his deed conveying to Trabue the 50 acres of land in question; but it is also reasonably certain, from the testimony found in this record, that the interest on these notes was kept paid up pretty well, though it is impossible for this court to say exactly what amount of money was paid Trabue on these notes when the transaction of November 18, 1910, took place, at which last-named date the four notes sued on were executed by Thomas to Trabue in the principal sum, in the aggregate, of $602.-61.

At the time of the execution of the notes herein sued on of date November 18, 1910, plaintiffs in error were residing upon the 50 acres of land in question as their homestead, and had always claimed the same as such, and continued to occupy the same as such from the date of their purchase from Trabue in December, 1901; and it is made reasonably certain and clear by the record in this case that at the time Rich Thomas executed the four notes sued on, in November, 1910, he was indebted to R. E. Trabue for the full amount for which the four notes sued on were executed; but it is also reasonably certain and clear to us that not all of this indebtedness was for the purchase money of the land in question, which was conveyed to Thomas by Trabue in 1901, but that a portion of this indebtedness was of a different character. Now, it is true that the trial court, by its second finding of fact, said that the notes sued on herein were given for the purchase price of this 50 acres of land, and, if the evidence in this record were sufficient to sustain this finding of fact on the part of the trial court, it would be our duty to adopt such finding, and we would do so; but, to our minds, this record discloses, beyond any reasonable contention, that this finding of fact of the trial court cannot be sustained by the evidence. We have concluded, on the contrary, that these four notes were not given for the purchase money alone that was due Trabue by Thomas for this land.

Now, the court further found, as above shown, that the defendant in error, R. P. Ash, at the time he purchased the notes sued on herein from Trabue, had no notice, either constructive or actual, that these four notes executed by Thomas were anything other than they purport to be—that is, purchase-money notes for the 50 acres of land in question, and that Ash having paid value for them, and having purchased them before maturity and in good faith, would be protected as an innocent purchaser of said notes, and the lien given to secure the same, even though said notes were not what they purported to be, and even though they might have been executed in payment of some other

indebtedness as well as for the purchase money due Trabue for said land.

As Thomas and wife were actually residing upon this property at the time of the execution of these notes, in November, 1910, as their homestead, and since the record in this case shows that on that day Thomas and wife made a deed conveying to Trabue this tract of land, and thereupon and on the same day Trabue reconveyed by deed the same land to Thomas, we hold that the effect in law of this transaction between Trabue and Thomas was but an attempt to create a lien upon the homestead of Thomas and wife, and that such attempt could only be successful to the extent of the unpaid purchase money which was at that time due Trabue under the sale to Thomas in December, 1901, and to that extent only; and if all of the money evidenced by these four notes had been in fact due Trabue as purchase money for said land under the transaction of December 20, 1901, we would not hesitate, of course, to hold that there was no inhibition, either constitutional or stattory, against the attempt of Thomas to incumber this land for the payment of its purchase money, because, in our opinion, such attempt on his part would be, in effect, but a renewal of the old notes and a continuation of the old debt for the purchase money for this land, and therefore this attempted lien would be valid even as between Trabue and Thomas, and, of course, would be' perfectly valid and enforceable by Ash, who was found by the trial court to be an innocent purchaser of the notes sued on. But since we have concluded that the trial court's finding of fact in the second paragraph cannot be sustained by the evidence in this record, and since we find that these four notes were executed in part for an indebtedness other than the purchase money due Trabue for said land, and since the law gives to the transaction between Trabue and Thomas and wife on November 18, 1910, the effect of a mortgage only, which could only be valid under the Constitution and laws of this state as to a homestead to the extent of the purchase money then due for the land, and since the actual occupancy of Thomas and wife of the land in question, considered in connection with the deed from Thomas and wife of November 18, 1910, and the deed back to Thomas and wife from R. E. Trabue at the same time, of which Ash had actual knowledge by recitation in the face of each of the notes purchased by him and here sued on, he cannot be protected as an innocent purchaser of the attempted lien on said land to any further extent that the purchase money that was actually due Trabue on November 18, 1910, for the land in controversy. Swain v. Cato, 34 Tex. 398; Wasson v. Davis, 34 Tex. 168; Sutton v. Sutton, 39 Tex. 552; Sanger Bros. v. Brooks, 101 Tex. 115, 105 S. W. 37; Wadsworth v. Powell, 191 S. W. 169.

The third assignment of error is, in effect, disposed of by what we have said in connection with the second assignment, and also the fourth assignment (incorrectly numbered fifth assignment) is, in effect, disposed of by what we have said in connection with the first assignment.

We have concluded that the trial court was correct in rendering judgment in favor of defendant in error as against plaintiff in error Rich Thomas for the amount of the notes, principal, interest, and attorney's fees sued on, but we are of opinion that the trial court was not justified or authorized by the evidence in this case to render judgment in favor of defendant in error foreclosing the lien on the 50 acres of land in controversy to the full extent of this personal judgment; and since the record is not in such shape that this court can ascertain, with reasonable certainty, just what amount of money was due R. E. Trabue on November 18, 1910, by Rich Thomas, as purchase money for the 50 acres of land in question, but is clearly of the opinion, from the evidence in the record, that the trial court was not justified in finding as a fact that all of the money represented by the four notes sued on was due Trabue as such purchase money, we have concluded that it is the duty of this court to affirm the case in so far as the personal judgment against plaintiff in error Rich Thomas is concerned, and to reverse the judgment in so far as the same forecloses a lien upon the land in question to the full extent of that judgment, and to remand the cause, with instructions to the trial court, on a new trial, to proceed to ascertain what amount was actually due R. E. Trabue on November 18, 1910, by Rich Thomas, as purchase money for this tract of land, under the transaction between them of December 20, 1901, and, when that amount of indebtedness is ascertained, the trial court will then proceed to foreclose the lien on the land in favor of defendant in error to the extent of such unpaid purchase money.

Affirmed in part and reversed and remanded in part, with instructions.

BROOKE, J., disqualified and not sitting.